IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BOBBY W. SLIGAR                                                                                        PLAINTIFF
*On Behalf of Bobby D. Sligar*

vs.                                            Civil No. 5:15-cv-05171

CAROLYN W. COLVIN                                                                                 DEFENDANT
Commissioner, Social Security Administration

## MEMORANDUM OPINION

Bobby W. Sligar ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his deceased father Bobby D. Sligar's applications for Supplemental Security Income ("SSI"), Disability Insurance Benefits ("DIB"), and a period of disability.

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 6.[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.    Background:**

The claimant in the present action, Bobby D. Sligar, is deceased.  This appeal is being brought by the claimant's son, Bobby W. Sligar, who is the Plaintiff in this action.  Thus, all references to the claimant are in reference to Bobby D. Sligar because this is an appeal of his denial

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ____" The transcript pages for this case are referenced by the designation "Tr."

of social security disability benefits.

As an initial matter, this case has been remanded before. On August 18, 2009, this case was reversed and remanded for further consideration of the *Polaski* factors. (Tr. 515-522). The procedural history of the claimant's case is outlined in that Report and Recommendation and will not be restated here. *Id.* After that remand, the claimant filed a second set of applications for DIB and SSI. The first and second set of applications were consolidated, and they were denied after an administrative hearing. (Tr. 468-478). Thereafter, claimant filed a third application for SSI benefits. On March 9, 2012, the SSA issued a fully favorable decision as to this third SSI application with an onset date of August 5, 2010. (Tr. 480-491).

On August 16, 2012, upon review, the Appeals Council issued another order remanding the first and second consolidated applications for further proceedings.[2] After a hearing held on December 14, 2012, the claimant passed away on January 1, 2013 due to a cardiac arrest and diabetes. Plaintiff was then substituted as the proper party in this claim. (Tr. 416). On May 2, 2013, a supplemental hearing was held during which Plaintiff and his grandfather, Bobby E. Sligar, testified. (Tr. 440-445).

On September 18, 2013, the SSA again denied these applications for disability benefits. (Tr. 416-439). In a twenty-four page opinion, the ALJ found the claimant met the insured status requirements of the Act through June 30, 2009. (Tr. 419, Finding 1). The ALJ found the claimant had not engaged in Substantial Gainful Activity ("SGA") since August 9, 2004, his alleged onset date. (Tr. 419, Finding 2). The ALJ found the claimant had the following three severe impairments:

---

[2] This claim is from the claimant's original onset date of August 9, 2004 through the day before the SSA approved benefits or through August 4, 2010.

disorder of the back, diabetes mellitus, and a mood disorder. (Tr. 419, Finding 3). The ALJ, however, also determined the claimant's impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 419-422, Finding 4).

In this decision, the ALJ evaluated the claimant's subjective complaints and determined his RFC. (Tr. 422-437). First, the ALJ evaluated the claimant's subjective complaints and found his claimed limitations were not entirely credible. *Id.* Second, the ALJ determined the claimant retained the capacity to perform the following:

> After careful consideration of the entire record, I find that the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he could frequently finger, handle and operate foot controls. He could not climb ropes and ladders. He could occasionally climb stairs and ramps, balance, crawl, kneel, stoop and crouch. He could frequently tolerate temperature extremes. Additionally, he could perform simple, routine, repetitive tasks in a setting where interpersonal contact was incidental to the work performed. He could work under supervision that was simple, direct and concrete.

*Id.*

The ALJ evaluated the claimant's Past Relevant Work ("PRW") and found the claimant was unable to perform any of his PRW. (Tr. 437, Finding 6). The ALJ then considered whether the claimant retained the capacity to perform other work existing in significant numbers in the national economy. (Tr. 437-438). The Vocational Expert ("VE") testified at the administrative hearing regarding this issue. *Id.* Based upon that testimony, the ALJ determined the claimant retained the capacity to perform the following three light, unskilled occupations: (1) food processing worker with 9,242 such jobs in the national economy and 581 such jobs in Arkansas; (2) cutting and slicing machine tender with 35,067 such jobs in the national economy and 967 such jobs in Arkansas; and

(3) production worker with 118,395 such jobs in the national economy and 2,984 such jobs in Arkansas. (Tr. 438).

Because the ALJ found the claimant retained the capacity to perform these three occupations, the ALJ also found the claimant had not been under a disability as defined by the Act from August 9, 2004 through August 4, 2010. (Tr. 438, Finding 11). Plaintiff sought review with the Appeals Council. Thereafter, the Appeals Council denied Plaintiff's request for review. On July 24, 2015, Plaintiff filed his Complaint in this case. ECF No. 1. Both Parties have filed appeal briefs and have consented to the jurisdiction of this Court. ECF Nos. 6, 10-11. This case is now ready for decision.

**2.    Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2010); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

3.     **Discussion:**

In his appeal brief, Plaintiff claims the ALJ's disability determination is not supported by substantial evidence in the record. ECF No. 10. Specifically, Plaintiff raises the following arguments for reversal: (A) the ALJ erred by giving little weight to the findings of the claimant's treating physicians, Dr. Janelle Potts, M.D. and Dr. Gannon Randolph, M.D.; (B) the ALJ erred by giving great weight to the findings of a non-examining medical consultant "who only reviewed some of Claimant's medical records after his death"; and (C) the ALJ erred by failing to fully and fairly develop the record.[3] ECF No. 10 at 7-17. The Court will address each of the arguments Plaintiff has raised.

A.     **Treating Physicians**

Plaintiff claims the ALJ improperly discounted the findings of Dr. Potts and Dr. Randolph. ECF No. 10 at 8-14. First, Dr. Potts completed a questionnaire on November 6, 2009 regarding the claimant's limitations. (Tr. 901-904). As noted by the ALJ, Dr. Potts reported the claimant had the following limitations:

> . . . poorly controlled diabetes, neuropathy, weakness in his legs and unsteady gait (Exhibit 27F). She also stated that he had depression and anxiety (exhibit 27F). Dr. Potts's medical source statement indicated that the claimant was quite limited due to his conditions.

(Tr. 430).

In his opinion, the ALJ discounted the findings of Dr. Potts for a variety of reasons. (Tr. 430-431). First, the ALJ found Dr. Potts's findings were not consistent with the claimant's treatment records. (Tr. 431). Notably, the ALJ found her findings do not "appear to take into account the

---

[3] Plaintiff includes these as one argument, but the Court will address these arguments separately.

claimant's lack of compliance with prescribed treatment, which is documented in the record." (Tr. 431). This includes the claimant's smoking habit, which he continued despite being advised to quit. *Id.* Second, the ALJ found Dr. Potts's findings did not take into account the claimant's "drug and alcohol use." (Tr. 431). The ALJ's opinion "simply describes his limitations without taking into account such use." *Id.* Third, the ALJ noted Dr. Potts was pressured into completing her report:

> Dr. Potts'[s] notes indicate that the claimant and his representative applied a certain amount of pressure on her to complete the medical source statement that has been submitted (exhibit 25F/19). A record from October 29, 2009 showed that at first Dr. Potts'[s] office had informed the claimant's representative that she would not complete it (exhibit 25F/19). Later, however, the claimant himself took the form into the office, and only then did Dr. Potts agree to make one exception and fill it out (exhibit 25F/19). The representative's office then called again asking if she had completed it (exhibit 25F/19).

(Tr. 431). As the ALJ noted, "the record from Dr. Potts'[s] office suggests that Dr Potts completed the form in such a way to avoid having the claimant or his representative repeatedly calling her office, which further lessens the weight that can be given to Dr. Potts'[s] medical source statement." *Id.*

Plaintiff claims these were not valid reasons for the ALJ to discount Dr. Potts's findings. ECF No. 10 at 8-12. Notably, Plaintiff claims it appears Dr. Potts *did take into account* his failure to following his prescribed course of treatment and drug and alcohol use. *Id.* Plaintiff also argues there is no indication Dr. Potts was pressured into completing this report. *Id.*

The Court has reviewed these arguments and finds the ALJ has still provided valid reasons for discounting Dr. Potts's findings. First, *even if* Dr. Potts did consider the claimant's failure to follow her prescribed course of treatment, her findings are still subject to scrutiny. Notably, the question of disability is a question reserved for the SSA. *See* 20 C.F.R. § 404.1527(e)(2) (2012). One of the major factors the ALJ considers in determining whether an individual is disabled is

whether he or she followed a prescribed course of treatment.  *See, e.g., Burnside v. Apfel,* 223 F.3d 840, 843-44 (8th Cir. 2010).  Even if that issue was not important to Dr. Potts, it is important to the SSA.  It is black-letter law in social security that "a failure to follow a prescribed course of medical treatment without good reason may be reason to deny benefits."  *Id.*  Thus, it was certainly within the ALJ's purview to discount Dr. Potts's findings partially because she did not consider–and could not consider–those facts and his failure to follow the prescribed course of treatment in light of the applicable law.

Second, as for whether Dr. Potts was pressured into completing this report, it was certainly reasonable for the ALJ to make that assumption.  Indeed, in the office note completed on October 29, 2009, Dr. Potts stated that this was "ONE EXCEPTION" and noted that "If they [claimant's counsel's office] call about it again, I will NOT fill it out."  (Tr. 879).  Such a notation certainly indicates she was pressured into completing this report.

Accordingly, based upon these findings, the ALJ gave "good reasons" for discounting Dr. Potts's findings; as such, the ALJ's determination to discount her findings is entitled to deference. *See Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000) (affirming the ALJ's decision to discount a treating physician's opinions and recognizing "[w]hether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation").

As for Dr. Randolph, the ALJ also considered his opinions.  (Tr. 431-433).  The ALJ, however, discounted those opinions because they were dated *after* August 4, 2010 or after the relevant time-period in this case.  *Id.*  Indeed, Dr. Randolph's report is dated August 13, 2013, which is *over three years* after the relevant time period.  *Id.*  Accordingly, the Court cannot find the ALJ

8

erred in discounting Dr. Randolph's findings. *See, e.g., Pyland v. Apfel,* 149 F.3d 873, 878 (8th Cir. 1998) (addressing the relevant time period for DIB and recognizing "evidence outside the relevant time period cannot serve as the only support for a disability claim").

### B. Consulting Physician

Plaintiff claims the ALJ erred by only relying on the findings of a consulting physician. ECF No. 10 at 14-15. As Plaintiff argues, "ALJ Starr based his decision expressly on the opinion of Dr. Amusa, a non-examining medical consultant." *Id.* Upon review of this claim, however, Plaintiff is simply incorrect. Indeed, the ALJ spent fifteen pages explaining the claimant's RFC and outlining his medical records in detail. There is simply no evidence to support Plaintiff's claim that the ALJ's RFC determination was based only upon this consulting physician's opinions.

### C. Record Development

Plaintiff claims the ALJ failed to develop the record. ECF No. 10 at 15. Plaintiff does not elaborate on this claim but instead broadly argues the ALJ did not develop the record. *Id.* According to well-settled law, reversal due to an ALJ's failure to develop the record is only warranted where such failure is unfair or prejudicial. *See Haley v. Massanari,* 258 F.3d 742, 748 (8th Cir. 2001). A claimant must show that the ALJ's fuller development of the record would have made a difference in his or her case or could have changed the outcome of his or her case. *See Onstead v. Shalala,* 999 F.2d 1232, 1234 (8th Cir. 1993).

In the present action, even assuming the ALJ did not fully and fairly develop the record, Plaintiff still offers no showing of prejudice beyond vaguely claiming that the record was incomplete or insufficient. *See* ECF No. 10 at 15. Thus, because there has been no showing of unfairness or prejudice, no remand is required. *See Onstead,* 999 F.2d at 1234 ("absent unfairness or prejudice,

9

we will not remand").

As a final note on this issue, if Plaintiff believed any additional information was necessary in this case, he certainly could have secured it and submitted to the ALJ. The fact this information was not presented to the ALJ indicates it was not significant to the disability determination. *See Shannon v. Chater,* 54 F.3d 484, 488 (8th Cir. 1995) ("Although the ALJ has a duty to develop the record despite the claimant's representation by counsel, the fact that Shannon's [claimant's] counsel did not obtain (or, so far as we know, try to obtain) the items Shannon now complains of suggests that these alleged treatments have only minor importance").

4.  **Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 3rd day of August 2016.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE